## KEELER vs. GREEN and RIDGWAY.

A stipulation in a lease of a quarry of a horse shoe shape, and having faces on the northwest, north, east, and southeast sides, "that said quarry shall be worked as the face is now opened," is not violated by quarrying one of the faces to a greater extent than another, and such quarrying will not be enjoined if the same general shape is preserved.

On motion to dissolve injunction upon coming in of the answer.

*Mr. A. Reed*, in support of the motion.

*Mr. G. D. W. Vroom* and *Mr. E. T. Green*, contra.

THE CHANCELLOR.

The injunction restrains the defendants from further opening the face of a quarry adjoining the feeder of the Delaware and Raritan Canal, leased to them by the complainant, beyond the face as opened at the time of the lease, and from depositing the stripping of the quarry over the northwesterly face, or within, on the interior or bottom of the quarry, or on the farm of the complainant, northwest of the quarry.

The complainant had demised this quarry to the defendants for three years from January 1st, 1868, by a lease, under seal, at the rent of $11,000 for the term, with a right of renewal for two years at a stipulated rent. The lease provided that the lessees should have the right to use thirty men in taking out stone, but no more, except at a stipulated increase of rent for each additional man.

It contained also these stipulations : "That said quarry

shall be worked as the face is now opened, following the good merchantable stone as deep as such stone shall run and in good quarrying shape, and so far as the water will drain with the pipes laid therein."

"That the stripping shall be deposited, the first year of the term, south of the feeder, along the bank of the same, on land of said Keeler, or in any other place designated by said Keeler opposite said quarry, not exceeding that distance ; and after the first year the stripping shall be deposited within the quarry wherever it can be done without obstructing the future working of the same or covering the face thereof, and if this cannot be done, it shall be deposited as above stipulated for the first year of the term."

The bill alleges that the defendants were not working the quarry as the face was opened at the time of making the lease, and failed to follow up the good merchantable stone as deep as they run in good quarrying shape, and as far as the water will drain, and that they were stripping and working far to the south of the face as opened at the making of the lease. No other specification is given of the manner in which this stipulation is violated.

The answer fully denies this charge, positively and clearly, in as definite and particular terms as it was made, first negatively, and then by affirming that the quarry had been worked in the precise manner provided in the lease, with the exception of six stones on the bottom which had not yet been removed, but which the defendants intend to remove.

What the complainant intended to charge as the violation of this specification, cannot be ascertained from the pleadings. But from an expression in one of the affidavits annexed to the bill, and from the position taken by counsel in the argument, I infer that the complaint is· that the quarry was not worked, and stone taken out to an equal extent from the face on every side. The quarry, at the date of the lease, had been opened and worked in a horse shoe shape, and its faces were on the northwest, north, and east, and southeast sides. The charge which I infer is, that it was worked mainly and

to the greatest extent on the southeast side, and not so much, if at all, on the northwest. In the first place, the answer fully and without evasion denies the breach of agreement as particularly as it is alleged in the bill. And in the second place, had the bill charged that the quarry was worked on one side more than the other, and the fact been admitted by the answer, the agreement does not appear to me to prohibit it. It only compels the defendants to work as the face was then opened, but does not oblige them to work every part of the face to the same extent. If they should take out fifty feet from one part of the face, and only ten feet from another, it is no breach of this agreement, provided they took out all the merchantable stone to the depth indicated, and left the face in good quarrying shape, which I must take to mean with a fair even surface, and not with jagged recesses. This is not opening a new face to the quarry, but simply working it from its old face as required by the lease. The face left after taking out stone to the extent of fifty feet, would not be in the same place or constituted by the same stone as the old one, but it is the same face in the sense in which that term is used in this lease. And the defendants have the right to remove the earth above the stone on the southeast side of the quarry, called in this lease the strippings, in order to get out the stone extending from that face to the southeast. So far as the injunction restrains the opening a new face to the quarry, it must be dissolved, not because the defendants have a right to open a new face, but because what they have done and propose doing, is not opening a new face.

The injunction also restrains them from depositing the strippings on the interior or bottom of the quarry. The bill alleges that the defendants have deposited strippings inside of the quarry to the height of thirty feet, and have thereby covered good merchantable stone to the depth of four or five feet, and have obstructed the ingress to and egress from the quarry, and have covered the face of the quarry in some places, and have thus injured the future working of the quarry. The answer admits the deposit of

strippings on the bottom of the quarry, but denies that there is any merchantable stone covered by it, or that the access to the quarry is at all injured by it, and alleges that the roads existing at the time of the lease are now open to a greater extent than they then were; and it denies that the face of the quarry is any where covered by strippings, except at the northwest side where some strippings deposited on the adjoining land of the complainant, by his consent, slid down in the quarry and covered part of its face. And the defendants aver that they do not intend to deposit any more strippings on that part of the complainant's farm.

The face of the quarry in this lease clearly means the perpendicular sides as opened, and not the *bottom* of the quarry, a term used in contradistinction to the face, and in a different sense. The deposit was required to be made on the bottom, unless it could not be made without obstructing the working of the quarry or covering the face. If there were good merchantable stone in the bottom which could be quarried to advantage, they ought not to be covered up. But the answer responsively denies that there are any; it responsively denies that the access to the quarry is obstructed by the deposit. This answer is not new matter. But the deposition read to contradict it, if it could be admitted, only says that the deposit *impedes* the ingress and egress, not that it *obstructs* it; any deposit would prevent passing over the spot where it was made, but if sufficient room was provided to pass in and out of the quarry, the access is not *obstructed;* which word does not include "made a little more inconvenient." The answer responsively denies anything that would be a breach of the agreement as to these deposits.

The strippings which were deposited on the northwest side of the quarry over its face, whether by accidentally sliding down, or by being intentionally dumped there, were put there in breach of the agreement, and to that extent the injunction must be retained.

As to the deposit on the complainant's farm, adjoining the quarry on the northwest side, the answer states that this

was done with the permission of the complainant; this, though new matter, is not denied by the complainant in his subsequent deposition. He only says that during the first year he gave such license, and did not afterwards give any license. He does not say that he revoked the license, or that he limited it when he gave it to the first year, but only that it was given some time in the first year. Such license would be deemed a continuing license until revoked, and as it no where appears that the defendants intended or threatened to continue depositing after the license is revoked, and as they deny that they intend to continue it, this appears no proper ground for injunction.

The injunction must be dissolved, except so much as prohibits the depositing of strippings on or over the northwest face of the quarry.

The costs must abide the event of the suit.